

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

December 22, 1969

Honorable Burton G. Hackney
Commissioner of Public Welfare
John H. Reagan Building
Austin, Texas 78701

Honorable James E. Peavy, M.D.
Commissioner of Health
Texas State Department of Health
Austin, Texas 78756

Opinion No. M-544

Re: May the Departments of
Public Welfare and Public
Health share the expense
of aircraft pilot's salary
each month even though
both departments may not
have used him?

Gentlemen:

In your letter requesting an opinion from this office, you submit the following facts, which we quote, in part, as follows:

"The Texas State Department of Health and the State Department of Public Welfare entered into Interagency Contracts for the purpose of using a passenger aircraft which was leased by the State Department of Public Welfare. The Interagency Contracts were as follows:

" . . .

"Contract No. IAC (70-71)-003, dated August 29, 1969.

"Each of the above contracts contained the following identical provisions in relation to the pilot:

"The Receiving Agency agrees to pay to the Performing Agency one half of the sum of the gross (monthly salary before deductions) monthly salary regularly paid to the pilot by the Performing Agency and the amount of OASDI employer matching and state retirement employer matching.

-2597-

"   . . .

"Each of these Interagency Cooperation Contracts was signed by James E. Peavy, M.D., Commissioner of Health, and Burton G. Hackney, Commissioner of Public Welfare, and approved by the Attorney General's office and by the State Board of Control.   . . .

"When the two Departments originally entered into the Interagency Cooperation Agreement, and at each subsequent renegotiation, it was understood that there might be times when both Departments would use the aircraft simultaneously, times when only one Department would use the aircraft, and times when neither might use the aircraft; therefore, the cost per flight hour was calculated on the basis of the flight hours used by each Department, as stipulated in the Contract.

"It was agreed, however, that a pilot to operate this aircraft for both Departments was essential and there was no way that the Departments could obtain the services of a pilot when needed except for him to be employed by one of the Departments. It was agreed also that the services of the pilot would be available for use at all times by either Department and the payment of his salary had no relation to the cost per flight hour nor to whether the aircraft was used for any hour or fraction thereof by either Department within a salary pay period.

"There had never been any question raised about the pay of the pilot in relation to the flight hours used by either Department until the voucher covering the period from August 1, 1969 through August 31, 1969, was returned to the State Department of Public Welfare by Mr. H. A. Foerster, Executive Director, State Board of Control, in a letter dated November 12, 1969, in which he stated that he was returning the purchase voucher for the reason that no services were performed for the Health Department during the month of August. The State Comptroller also rejected payment and gave as the reason:

"'Account does not show any use by your department - how can you be charged expense of

operation' (meaning the Health Department)."

"It was the intention of the two Departments
and, in our opinion, it is clearly stated in the
Contract that the pilot's salary is to be divided
between the two Departments for he is performing
a service for both Departments. We do not believe
that it could be said that no service was performed
solely on the basis that the Health Department did
not use the aircraft for any flight during the month.
The pilot was available for their use at any time,
and the Health Department understood and considers
that this is a service which is made available to
them. If the specified portion of his salary
cannot be paid by the Health Department during
a month when no flight for the Health Department
is made, then it would follow that his salary would
have to be prorated between the two Departments in
proportion to the flight hours used by each Depart-
ment. This would raise another serious question
because there are times when neither Department
uses the aircraft, but still the pilot would have
to be retained on the payroll to be available
when needed."

With regard to these facts you ask the following question:

"Whether the Texas State Department of
Health, can pay the State Department of Public
Welfare one-half of the salary of the pilot
as provided for under the terms of the Inter-
agency Agreements irrespective of whether the
aricraft is used by Health Department employees
during any specific month?"

The contractual provision in question is contained in
Interagency Cooperation Contract No. IAC (70-71)-003. This con-
tract was entered into by the Texas Department of Public Welfare
as performing agency and the Texas State Department of Health as
receiving agency under the authority of the "Interagency Coopera-
tion Act", Article 4413(32), Vernon's Civil Statutes, and the
Public Welfare Act of 1941, Article 695(c), Vernon's Civil Statutes.
This contract was approved by the Board of Control and became
effective September 1, 1969, and terminates on August 31, 1971.
The provisions of the subject contract which concern the payment
of the pilot's salary are plain and unambiguous. It is our opinion,
based upon the detailed facts submitted, that the pilot performed
services equally for both contracting agencies; and since we find

no conflicting contractual provision or other legal basis on which the State Comptroller would be authorized to refuse payment to the State Department of Health for one half of the monthly salary of the pilot, it is our conclusion that the State Department of Health is not only authorized but obligated under the current contract to pay to the State Department of Public Welfare one half of the salary of the pilot, regardless of whether the aircraft is used by the State Department of Health employees during any specific month.

## S U M M A R Y

The State Department of Health is not only authorized but obligated, under the current contract, to pay to the State Department of Public Welfare one half of the salary of the pilot, regardless of whether the aircraft is used by the State Department of Health employees during any specific month.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Ivan R. Williams, Jr.
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
Alfred Walker, Co-Chairman
Sam Jones
Jack Goodman
Dyer Moore, Jr.
Ed Esquivel

MEADE F. GRIFFIN
Staff Legal Assistant

NOLA WHITE
First Assistant